UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANTHONY LEON SCHILLER,

                    Petitioner,

v.                                    Case No. 3:10-cv-161-J-34TEM

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                    Respondents.
_____

### ORDER

### I. Status

Petitioner Anthony Leon Schiller initiated this action by filing a pro se Petition for Writ of Habeas Corpus (Doc. #1) with exhibits (P. Ex.) under 28 U.S.C. § 2254 on February 23, 2010. Petitioner challenges a 2004 state court (Duval County, Florida) judgment of conviction for two counts of burglary. Respondents have submitted a memorandum in opposition to the Petition. See Respondents' Response (Response) (Doc. #28) with exhibits (Resp. Ex.). On March 9, 2010, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. #6), admonishing Petitioner regarding his obligations and giving Petitioner a time frame in which to submit a reply. Petitioner submitted a brief in reply on

March 7, 2012.  <u>See</u> Petitioner's Reply (Doc. #36).  This case is ripe for review.

## II. Procedural History

On March 4, 2004, the State of Florida charged Anthony Leon Schiller with burglary of a dwelling (three counts) and burglary of a conveyance (two counts). Resp. Ex. 5 at 33-34, Amended Information. While the pretrial proceedings were ongoing, Petitioner filed a <u>pro</u> <u>se</u> petition for writ of habeas corpus. Resp. Ex. 1. The appellate court denied the petition on June 22, 2004. <u>Schiller v. State</u>, 876 So.2d 565 (Fla. 1st DCA 2004); Resp. Ex. 2. After jury selection, Schiller proceeded to a trial. Resp. Exs. 8-14, Transcript of the Jury Trial (Tr.). At the conclusion of the trial, a jury found Schiller guilty of burglary of a dwelling (counts one and three) and not guilty of burglary to a conveyance (count two). Tr. at 845-46; Resp. Ex. 5 at 156-58, Verdicts. On November 19, 2004, the trial court sentenced Schiller, as a habitual felony offender, to a term of incarceration of fifteen years on each count, to run concurrently. Resp. Ex. 5 at 165-71, Judgment.

After trial, Petitioner filed a second petition for writ of habeas corpus on October 29, 2004. Resp. Ex. 3. On December 6, 2004, the appellate court denied the petition. <u>Schiller v. State</u>, 888 So.2d 628 (Fla. 1st DCA 2004); Resp. Ex. 4.

On appeal, Petitioner, through counsel, filed an Initial Brief, arguing that the trial court erred when it: permitted Petitioner to represent himself without making the inquiries required by <u>Faretta v. California</u>, 422 U.S. 806 (1975), and Florida Rule of Criminal Procedure 3.111(d) (ground one); failed to properly instruct the jury on the offense of burglary of a dwelling (ground three); commented on Petitioner's failure to testify (ground four); denied Petitioner's motion to suppress without affording him an evidentiary hearing (ground six); and imposed habitual offender sentences when Petitioner's predicate offenses did not meet the sequential sentencing requirement, as interpreted in <u>Richardson v. State</u>, 884 So.2d 950 (Fla. 4th DCA 2004) (ground seven). Resp. Ex. 19. Schiller also argued that the trial court abused its discretion when it denied Petitioner's motion for continuance to secure the presence of defense witnesses (ground two), and that Petitioner was denied his right to due process of law and trial by a neutral and detached magistrate when the trial court repeatedly rebuked Petitioner in the presence of the jury (ground five). <u>Id</u>. The State filed an Answer Brief, <u>see</u> Resp. Ex. 20, and Petitioner filed a Reply Brief, <u>see</u> Resp. Ex. 21. On June 16, 2006, the appellate court affirmed Petitioner's conviction and sentence per curiam without issuing a written opinion. <u>Schiller v. State</u>, 935 So.2d 505 (Fla. 1st DCA 2006); Resp. Ex. 22. The court denied Petitioner's motion for rehearing on August 10, 2006. Resp.

Exs. 23; 24.  The mandate issued on August 28, 2006.[1]  Petitioner did not seek review in the United States Supreme Court.

On or about February 5, 2007, Petitioner filed a pro se petition for writ of habeas corpus, alleging that appellate counsel was ineffective on direct appeal.  Resp. Ex. 25.  The appellate court denied the petition on the merits on April 2, 2007.  Schiller v. State, 960 So.2d 12 (Fla. 1st DCA 2007).  The court denied Petitioner's motion for rehearing on June 5, 2007.  Resp. Ex. 26.

Later in February 2007, Petitioner also filed a pro se motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 motion).  Resp. Ex. 27 at 1-80.  In his request for post conviction relief, Petitioner asserted that counsel was ineffective for the following reasons: counsel, Matthew Shirk, never objected to the State Attorney's perjured Information (ground one); Shirk never conveyed any plea offer or discussed viable options with Petitioner (ground two); counsel, Katy Aguilar, never conveyed any plea offer or discussed viable options with Petitioner (ground three); counsel Aguilar and McGuiness were "combative, delinquent and [contradictory]" (ground four); Shirk and Aguilar refused to aid Petitioner in preparing motions (ground five); they refused to disclose discovery and "logical information" (ground six); counsel, David Taylor, failed to object to the

---

[1] Online docket, Anthony Schiller v. State of Florida, Case No. 1D04-5441, website for the First District Court of Appeal (http://www.1dca.org).

State's prejudicial comments in closing argument (ground nine); Taylor's representation fell below that of any counsel (ground ten); Taylor failed to move for a mistrial (ground twelve); Taylor failed to object (ground thirteen); Taylor failed to ensure that Petitioner received the proper jail credits (ground fourteen); Aguilar, Shirk and Taylor failed to object to the State's use of the wrong sentencing guidelines (ground fifteen); counsel failed to move to suppress photographs that were neither signed nor dated (ground sixteen); Taylor failed to obtain a presentence investigation report (ground seventeen); Taylor was ineffective for hiring Investigator Kevin Mitchell (ground eighteen); counsel failed to conduct a proper investigation (ground nineteen); Aguilar failed to object to the initial threats of habitualization (ground twenty); Aguilar failed to move for discharge on speedy trial grounds (ground twenty-three); Taylor failed to object to the erroneous jury instruction that left out an essential element of the crime (ground twenty-five); Aguilar failed to address the insanity defense or explore addiction or mental issues (ground twenty-eight); and Aguilar failed to inform the court of a conflict she had relating to a State informant (ground twenty-nine).

Schiller also asserted that the trial court, state attorneys, and Aguilar erred by allowing Petitioner to represent himself (ground seven); the trial court should have granted Schiller a continuance (ground eight); the State and the trial court were

biased against the defense (ground eleven); the prosecutor failed to disclose favorable evidence (ground twenty-one);[2] the State Attorney's Office committed fraud in that the prosecution discouraged the production of facts and evidence (ground twenty-four); the Information was a sham (ground twenty-six); the State Attorney's Office caused an unconstitutional delay in the case and deprived Schiller of a speedy and fair trial (ground twenty-seven); the trial court failed to inquire into Petitioner's competence and ability to represent himself (ground thirty); the State Attorney's Office, the Public Defender's Office, and the law firm of Selinger & Fletcher denied Petitioner a meaningful and competent review of the records before, during, and after the trial (ground thirty-one); the State excluded favorable testimony for the defense and withheld favorable evidence (ground thirty-two); and the trial court was biased and possibly racist and vindictive at the sentencing (ground thirty-three).

The court denied Petitioner's Rule 3.850 motion on October 28, 2008. Id. at 106-46. On January 8, 2008, the court denied Schiller's motion for rehearing. Id. at 147-52, 153-54. Petitioner appealed the denial of his Rule 3.850 motion. On July 27, 2009, the appellate court affirmed the trial court's decision per curiam. Schiller v. State, 13 So.3d 1060 (Fla. 1st DCA 2009);

---

[2] As noted by the post-conviction court, ground twenty-two appears to be missing. See Resp. Ex. 27 at 26-28.

Resp. Ex. 28.  The mandate issued on August 24, 2009.  Resp. Ex. 28.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations.  See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court.  Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

### V.  Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d).  This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal

7

law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2003).

As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:

A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context. An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and mixed questions of law and fact are reviewed de novo, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.

Jennings v. McDonough, 490 F.3d 1230, 1236 (11th Cir. 2007) (quotation marks and citations omitted). In sum, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409, 120 S.Ct. at 1521. Finally, 28 U.S.C. § 2254(e)(1) commands that for a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of

8

> correctness [of a state court's factual
> findings] by clear and convincing evidence."[3]
> 28 U.S.C. § 2254(e)(1).

Ward v. Hall, 592 F.3d 1144, 1155-56 (11th Cir. 2010), cert.

denied, 131 S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an

adjudication on the merits, so that the state court's determination

will be entitled to deference for purposes of federal habeas corpus

review under AEDPA, all that is required is a rejection of the

claim on the merits, not an opinion that explains the state court's

rationale for such a ruling. Harrington v. Richter, 131 S.Ct. 770,

785 (2011) (holding that section 2254(d) does not require a state

court to give reasons before its decision can be deemed to have

been adjudicated on the merits); Wright v. Sec'y for the Dep't of

Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S.

906 (2003).  Thus, to the extent that Petitioner's claims were

adjudicated on the merits in the state courts, they must be

evaluated under § 2254(d).

## VI. Exhaustion/Procedural Default

There are prerequisites to a federal habeas review.  Before

bringing a § 2254 habeas action in federal court, a petitioner must

exhaust all state court remedies that are available for challenging

---

[3] "This presumption of correctness applies equally to factual
determinations made by state trial and appellate courts." Bui v.
Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted)
(citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

his state conviction.  See 28 U.S.C. § 2254(b), (c).  To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review.  Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted).  Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)) To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S.Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

Recently, the United States Supreme Court discussed the doctrine of procedural default:

> Federal habeas courts reviewing the
> constitutionality of a state prisoner's
> conviction and sentence are guided by rules
> designed to ensure that state-court judgments
> are accorded the finality and respect
> necessary to preserve the integrity of legal
> proceedings within our system of federalism.
> These rules include the doctrine of procedural
> default, under which a federal court will not
> review the merits of claims, including
> constitutional claims, that a state court
> declined to hear because the prisoner failed
> to abide by a state procedural rule. See,
> e.g., Coleman,[4] supra, at 747-748, 111 S.Ct.
> 2546; Sykes, supra, at 84-85, 97 S.Ct. 2497.
> A state court's invocation of a procedural
> rule to deny a prisoner's claims precludes
> federal review of the claims if, among other
> requisites, the state procedural rule is a
> nonfederal ground adequate to support the
> judgment and the rule is firmly established
> and consistently followed. See, e.g., Walker
> v. Martin, 562 U.S. --, --, 131 S.Ct. 1120,
> 1127-1128, 179 L.Ed.2d 62 (2011); Beard v.
> Kindler, 558 U.S. --, --, 130 S.Ct. 612,
> 617-618, 175 L.Ed.2d 417 (2009). The doctrine
> barring procedurally defaulted claims from
> being heard is not without exceptions. A
> prisoner may obtain federal review of a
> defaulted claim by showing cause for the
> default and prejudice from a violation of
> federal law. See Coleman, 501 U.S., at 750,
> 111 S.Ct. 2546.

Martinez v. Ryan, 132 S.Ct. 1309, 1316 (2012).

Thus, procedural defaults may be excused under certain circumstances: notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of

---

[4] Coleman v. Thompson, 501 U.S. 722 (1991).

justice. <u>Maples v. Thomas</u>, 132 S.Ct. 912, 922 (2012) (citations omitted); <u>In Re Davis</u>, 565 F.3d 810, 821 (11th Cir. 2009) (citation omitted). In order for Petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S.Ct. 2639). Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id</u>. at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S.Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999), <u>cert</u>. <u>denied</u>, 528 U.S. 934 (1999).

In <u>Martinez</u>, the Supreme Court modified the general rule expressed in <u>Coleman</u>[5] to expand the circumstances falling within the definition of "cause" to excuse a procedural default. <u>Martinez</u>, 132 S.Ct. at 1315.

> Allowing a federal habeas court to hear a claim of ineffective assistance of trial

---

[5] "Negligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.'" <u>Maples v. Thomas</u>, 132 S.Ct. 912, 922 (citing <u>Coleman</u>, 501 U.S. at 753). The Court reasoned that, under principles of agency law, the attorney is the prisoner's agent, and therefore, the principal bears the risk of negligent conduct on the part of his agent. <u>Coleman</u>, 501 U.S. at 753-54. In <u>Coleman</u>, the alleged ineffectiveness of counsel was on appeal from an initial-review collateral proceeding, and in that proceeding the prisoner's claims had been addressed by the state habeas trial court. <u>Id</u>. at 755. However, the <u>Martinez</u> Court addressed inadequate assistance of counsel at an initial-review collateral proceeding.

counsel when an attorney's errors (or the absence of an attorney) caused a procedural default in an initial-review collateral proceeding acknowledges, as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim. From this it follows that, when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. Cf. Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (describing standards for certificates of appealability to issue).

Id. at 1318-19.

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if he can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and
> prejudice, there remains yet another avenue
> for him to receive consideration on the merits
> of his procedurally defaulted claim. "[I]n an
> extraordinary case, where a constitutional
> violation has probably resulted in the
> conviction of one who is actually innocent, a
> federal habeas court may grant the writ even
> in the absence of a showing of cause for the
> procedural default." <u>Carrier</u>, 477 U.S. at
> 496, 106 S.Ct. at 2649.[6] "This exception is
> exceedingly narrow in scope," however, and
> requires proof of actual innocence, not just
> legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d
> 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)), <u>cert</u>. <u>denied</u>, 535 U.S. 926 (2002). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderson v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

### VII. Findings of Fact and Conclusions of Law

#### A. Ground One

As ground one, Petitioner claims that the trial court's <u>Faretta</u> inquiry was inadequate and he should not have been

---

[6] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

permitted to represent himself.  Schiller raised this issue in his brief on direct appeal, <u>see</u> Resp. Ex. 19 at 13-16, and the State filed an Answer Brief, <u>see</u> Resp. Ex. 20 at 12-19.[7]  The appellate court affirmed Petitioner's conviction and sentence per curiam. <u>Schiller</u>, 935 So.2d 505; Resp. Ex. 22.  Assuming that <u>pro</u> <u>se</u> Petitioner intends to raise the same claim here that he raised on direct appeal in state court, his <u>Faretta</u> claim is sufficiently exhausted.[8]

The State, in its appellate brief, addressed the claim on the merits.  Thus, the appellate court may have affirmed Petitioner's conviction based on the State's argument on the merits.  If the appellate court addressed the merits, Petitioner would not be entitled to relief because the state court's adjudication of this claim is entitled to deference under AEDPA.[9]  After a thorough review of the record and the applicable law, the Court concludes

---

[7] Schiller raised this issue in his Rule 3.850 motion, as ground seven.  In denying the post-conviction motion as to the issue, the trial court stated: "Furthermore, the trial court inquired at various stages during the trial as to whether the Defendant wished to be represented by an attorney, and the Defendant chose to be represented by an attorney only after closing arguments were complete."  Resp. Ex. 27 at 109.

[8] To the extent that Schiller has expanded the claim to include new factual allegations that were not before the state appellate court, those claims are procedurally barred.  <u>See</u> Response at 17.  Schiller has not shown both cause excusing the default and actual prejudice resulting from the bar.  Moreover, he has not shown that he is entitled to the fundamental miscarriage of justice exception.

[9] <u>See</u> <u>Harrington</u>, 131 S.Ct. at 785.

that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Additionally, assuming that the state court's adjudication of this claim is not entitled to deference under AEDPA, Petitioner's claim is, nevertheless, without merit.   The following facts are pertinent in assessing this claim.  On May 8, 2003, Petitioner was arrested in connection with burglaries in Duval County, Florida. Resp. Ex. 5 at 1-4.   The court appointed the Public Defender's Office to represent Petitioner.  Assistant Public Defender Matthew Shirk was the first attorney in the Public Defender's Office to represent Schiller.  Id. at 11.  Although Schiller was represented by counsel, he filed pro se motions.  Id. at 14, 15, 17, 26, 28, 30.

Throughout 2003, Petitioner persistently accused his appointed counsel of incompetence and conflict of interest and repeatedly requested the court to appoint new counsel for him.  On November 21, 2003, in a hearing before the Honorable Henry E. Davis (state court judge in the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida), Assistant Public Defender Katy Aguilar stated: "Judge, I think the last time we were in court Mr. Schiller had indicated that he was not satisfied with the way I was

16

representing him, and you were going to either . . . appoint him an attorney or keep me on." Resp. Ex. 18 at 3. Acknowledging the need to determine "whether Mr. Schiller is competent to make the decision to represent himself," the trial judge stated that he had some questions that Dr. Bloomfield, Dr. Neidigh or Dr. Krop could answer. <u>Id</u>. When the trial judge asked Schiller if he still wished to represent himself, Schiller replied: "Your Honor, I feel that I should be reappointed counsel on several grounds . . . ." <u>Id</u>. at 5.

Next, the trial judge ordered that Schiller be evaluated to determine his competency. <u>Id</u>. at 6. Additionally, the trial judge informed Schiller that, at the next hearing, he would permit Schiller to represent himself "if I'm satisfied that you're in a position to make that decision . . . ." <u>Id</u>. at 7. Judge Davis also stated: "Or if you show some basis for having Ms. Aguilar replaced by another lawyer, I'll consider that also." <u>Id</u>. On November 26, 2003, the court appointed Dr. Stephen I. Bloomfield, Ed.D. to examine Schiller for competency and sanity. Resp. Ex. 5 at 24, Order Appointing Expert to Examine Defendant and Report to Defendant's Attorney.

On January 8, 2004, Aguilar stated that Schiller was competent based on Dr. Bloomfield's evaluation. Resp. Ex. 16 at 3-4. Upon the trial judge's inquiry, Schiller stated that he wanted the court to appoint him a lawyer outside of the Public Defender's Office.

17

_Id_. at 5.  Next, the trial judge informed Schiller that "if you are dissatisfied with your lawyer's representation at this time, what I would do is inquire of her as to what it is she has done while representing you." _Id_. at 6.  He explained that if Schiller did not want the Public Defender's Office to represent him, he could either hire his own lawyer or represent himself.  _Id_.  When Schiller asked about standby counsel, the trial judge told him that he would not appoint standby counsel at this stage of the proceedings.  _Id_. at 6-7.

Judge Davis then asked Schiller if he was dissatisfied with Aguilar's representation.  _Id_. at 7.  Schiller responded: "Absolutely, Your Honor."  _Id_.  The trial judge then conducted a _Nelson_[10] inquiry[11] and requested Aguilar to set forth what she had done to prepare Schiller's defense.  _Id_.  After her explanation, _see_ _id_. at 7-9, the trial judge concluded:

> Mr. Schiller, at this time[,] I'm finding that Ms. Aguilar and the public defender's office has [sic] provided you with and is [sic] providing you with competent assistance, effective assistance of counsel.  And the office of the public defender is capable of

---

[10]  _Nelson v. State_, 274 So.2d 256 (Fla. 4th DCA 1973).

[11]  _Laramee v. State_, No. 5D10-3865, 2012 WL 2158760 (Fla. 5th DCA June 15, 2012), at *2 ("A _Nelson_ hearing is required only when the defendant makes a 'clear and unequivocal' statement that he wishes to discharge appointed counsel, the discharge request is based on a claim of incompetence, and the alleged ineffectiveness arises from counsel's current representation.")(citation omitted).

and willing to continue to provide you with
effective assistance of counsel.

So at this time I will find that the
office is providing effective assistance of
counsel, and that you are not entitled to
appointment of replacement counsel or at this
point standby counsel.

Now, my question to you, Mr. Schiller, is
do you wish to represent yourself, or do you
wish for the public defender's office to
represent you?

Id. at 11.  Schiller replied:

All I ask is that I get represented
properly, Your Honor.  I'm being accused of
something I didn't do.  I'm not going to --
I'm going to leave it at that, Your Honor.
Period.

Id. at 12.  The trial judge found that Schiller had not made an

unequivocal request for self-representation, but told him:  at the

next hearing, "if you tell me you want to represent yourself, I'll

conduct a Nelson/Faretta inquiry" at that time.   Id. at 14.

Knowing that Schiller was concerned about several pro se motions,

the trial judge informed him:

Mr. Schiller, as long as you're represented by
an attorney, I don't recognize motions filed
by you.  And I have not removed your attorney
from your case because you have not asked me
to do so.

Id. at 16.

On March 4, 2004, Aguilar filed a motion to withdraw, arguing

that the Public Defender's Office had a conflict of interest with

Schiller.  Resp. Ex. 5 at 35.  At a March 4th hearing, Schiller

told the trial judge that he did not want "to be left without counsel" since he was "not able to represent himself." Resp. Ex. 16 at 22. After hearing what Aguilar had done to prepare Schiller's defense, id. at 22-28, the trial judge concluded:

> At this time I'll find that Ms. Aguilar is providing Mr. Schiller with effective assistance of counsel. There is nothing to indicate that she is not providing Mr. Schiller with competent representation.
>
> At this point I will not discharge the public defender's office for that reason.
>
> The public defender's office will continue to represent Mr. Schiller unless Mr. Schiller makes a specific request that that office be discharged from his case.
>
> Now, Mr. Schiller, what that means at this point is you can continue with the representation by the public defender's office, it would be to your advantage to cooperate with that office, or you can make a request to represent yourself.
>
> And, if you make a specific request to represent yourself at these proceedings, then I'll conduct the proceeding required by the law to see if you are, in fact, competent to make the decision to represent yourself.
>
> . . . .
>
> Now, Mr. Schiller, with that in mind your options at this point; you can represent yourself -- or you can make the request to represent yourself and I'll conduct the proper inquiry, or you can elect to cooperate with your lawyer. Can you tell me which one you want to do?

Id. at 28-29, 30. Schiller responded: "Your Honor, at this time, I have no choice but to let Ms. Aguilar represent me." Id. at 30.

To clarify Schiller's decision, the trial judge asked him again what he wanted to do. _Id_. at 31. Schiller replied that he wanted the Public Defender's Office to continue to represent him. _Id_. at 32. On March 10, 2004, the trial judge denied Aguilar's motion to withdraw. Resp. Ex. 5 at 36, Order; Resp. Ex. 16 at 41.

At a May 27th hearing, Schiller again complained about Aguilar's representation and described "her mismanagement and recklessness." Resp. Ex. 6 at 203. Ultimately, the trial judge concluded:

> Mr. Schiller, we are here to discuss the matters that are scheduled for this afternoon. We are not going to ramble on those things.
>
> At this time I'll find that Mr. Schiller has -- now Mr. Schiller, I understand you clearly you do not want Ms. Aguilar to represent you at your trial in this case, is that correct?  I just want to be clear.

_Id_. at 207.  Schiller responded: "I have no choice." _Id_.  Finding that Schiller had exercised his right to discharge the Public Defender's Office, the trial judge then proceeded to advise Schiller of his rights and point out the advantages of representation by a lawyer. _Id_. at 208.

> THE COURT: Mr. Schiller, I am required to give you this information.  You can do with it as you choose.
>
> Now a lawyer has to [sic] experience and knowledge of this entire proceeding.  These lawyers have been to law school.  You said you have not been to law school.  You haven't finished high school.

THE DEFENDANT: I didn't say that. I said I didn't graduate college, Your Honor.

THE COURT: Oh, I'm sorry, you didn't graduate college.

Now your lawyers have been through these proceedings. They know how the process works from the beginning through the end.

Now if you have a trial in this case the first thing you would have to do is go through jury selection and the jury qualification. The jury selection process is governed by specific rules of procedure, and the lawyers knowledge and experience may improve or enhance the selection [and] the process on your behalf.

The lawyers can call witnesses for you and question witnesses against you and the lawyers can present evidence on your behalf. A lawyer can advise you as to whether you should testify or not testify, the consequences of that decision and what you have the right to say and not to say. The lawyers know the rules of evidence and know what evidence can and cannot come into trial.

I notice you have a lot of papers here and a lot of motions. During trial you are not to file any motions and papers.

Now your lawyer may provide assistance in assuring that the jury is given complete and accurate jury instructions and give a closing argument on your behalf and prevent improper argument by the prosecutor. And the lawyer may ensure that any errors committed by me during the trial are properly preserved for appellate review. These are matters that your lawyer can assist you in.

If you are convicted, and I don't [know] whether you will be, a lawyer's assistance may be used in preparing sentencing and ensure favorable facts are brought to the attention of the court, and the lawyers make sure the

22

court is advised of all legal and available
favorable dispositions.

In this case the state would be seeking a
habitual offender status against you that is
to enhance the sentence.  It may be that you
do not qualify for habitual offender.  I don't
know whether you would or not.  The lawyers
would be able to help you in that regard.  And
the lawyer may ensure that whatever sentence
you get, if you are convicted, [is] a legal
sentence.  An attorney's legal knowledge and
experience may be useful in filing an appeal
and/or seeking release in this case.

Id. at 208-11.

Additionally, the trial judge explained the disadvantages of

self-representation.

Now it is almost always unwise to
represent yourself in court.  Here are some
disadvantages.  You will not get any special
treatment during this trial just because you
are representing yourself.  You will not be
entitled to a continuance simply because you
wish to represent yourself throughout these
proceedings if you get in trial and do not
understand something.

Not because you are in custody, you will
be limited to the legal resources that are
available to you while you are in custody.
You will not be entitled to any additional
library privileges just because you are
representing yourself, and a lawyer has no
restrictions in researching your defense.
Lawyers have access to the computers and the
law library which you will not have.

Now you are not required to possess the
legal knowledge and skills of an attorney in
order to represent yourself.  However, you
will be required to abide by the rules of
criminal law and the rules of courtroom
procedure.  These law[s] took lawyers years to
learn and abide by.

> If you demonstrate an unwillingness to
> abide by this rule or these rules or an
> inability to abide by these rules, I could
> terminate your right to represent yourself if
> you are representing yourself.   Do you
> understand that, Mr. Schiller?

Id. at 211-12.   Schiller affirmed that he understood the

disadvantages of proceeding on his own without counsel's

representation.   Id. at 212.

The trial judge continued advising Schiller as to the

disadvantages of representing himself:

> Now if you are disruptive in the
> courtroom during the course of the trial, the
> court can terminate your said representation
> and remove you from the courtroom and the case
> would continue without your presence.  The law
> permits that you would not be able to stop the
> trial by being disruptive.
>
> Do you understand that your access to the
> state attorney who is prosecuting you will be
> limited compared to what a lawyer can do in
> regard to contacting the State Attorney's
> Office?  The prosecutor is probably not going
> to accept calls from you and she's not going
> to discuss the case with you in court.  You
> will be limited to your ability to negotiate
> this case or get additional evidence or
> whatever you want to.  Your lawyer can act as
> a liaison or go-between on your behalf in this
> case.  Also the state is not likely to go
> easier on you or give you a better disposition
> just because you are representing yourself in
> this case.
>
> Also under the laws that exist now, if
> you are convicted, you will not be able to
> successfully appeal on the grounds that you
> lacked skills necessary to represent yourself
> at trial.  In other words, you cannot claim
> that you received ineffective assistance of
> counsel if you yourself are providing that

counsel. So that would be something you couldn't pursue post conviction.

Now do you have any questions, Mr. Schiller, about these disadvantages? I understand the depositions have been complete except for this one newly disclosed witness.

Id. at 212-13.

When the trial judge inquired as to Schiller's ability to read and write, Schiller (35 years old at that time) affirmed that he could read and write, but had not graduated from college. Id. at 208, 213, 215. The trial judge stated:

Mr. Schiller, at this time I'll find that you are competent to make the decision to represent yourself and I'll proceed on that basis.

Now, Mr. Schiller, the law permits me to appoint standby counsel, and I would -- I know it puts the Public Defender's Office in an awkward position of [sic] Mr. Schiller. I would appoint the Pubic Defender's Office to represent you to serve in the capacity of standby counsel but only if you affirmatively ask they be appointed as standby counsel. I'm not going to force standby counsel. I can't do that legally.

The role of standby counsel would be here to answer any questions you may choose to ask them if you ask questions in a civil manner. It's not in an antagonistic manner. If you have questions about what you should do, there will be an attorney here from the Public Defender's Office, Ms. Aguilar or Ms. [sic] McGuinness. You could ask general questions, but they would not take over the case for you in that capacity. They would not select a jury for you. They will not question or cross-examine witnesses against you in this case.

>           Now do you want me to appoint standby
>       counsel to represent you in this case?

Id. at 215-16.  Schiller responded: "Absolutely."  Id. at 216.  As

additional instructions to Schiller relating to standby counsel,

the trial judge advised:

>           The role of standby counsel is not to work
>       under your direction.   That's not how it
>       works.  You just answered the question you
>       had.  You are not going to direct the
>       activities of those attorneys.  If you want to
>       represent yourself you have the whole ball
>       game.  It's your game.

Id. at 217.

On June 1st, the trial judge sua sponte discharged the Public

Defender's Office from any further representation, including its

role as standby counsel.  Id. at 285.  The court, on July 15th,

appointed David Taylor, as Schiller's standby counsel only.  Id. at

291-92; Resp. Ex. 5 at 73-74, Order Granting Motion to Withdraw and

Appointing Attorney.

Schiller's standby counsel was available to assist Schiller

him throughout the trial.  After closing arguments, the following

colloquy ensued:

>           [THE COURT]: Mr. Taylor, have you had a
>       chance to look at the revised instructions?
>
>           MR. TAYLOR [standby counsel]: Yes, sir, I
>       have.
>
>           THE COURT: Did you note anything that
>       needed to be changed or corrected?
>
>           MR. TAYLOR: No, sir, I do not.

MR. SCHILLER: Yeah, David Taylor can take over as counsel now.

THE COURT: I didn't hear you.  What did you say, Mr. Schiller?

MR. SCHILLER: Mr. Taylor can take over as counsel now.  I no longer wish to represent myself.

THE COURT: Mr. Schiller, I assume that was sarcasm.

But Mr. Taylor, were you able to hear what Mr. Schiller said?

MR. TAYLOR: Yes, sir, I did.

THE COURT: Mr. Schiller, the case may not be over at this point.  In fact, it is not over at this point.  This is not the time to be sarcastic.  Do you wish Mr. Taylor -- do you wish to have counsel appointed to represent you at this point?

MR. SCHILLER: Yes, sir, Your Honor.

THE COURT: Mr. Taylor, are you willing to accept the appointment at this point?

MR. TAYLOR: Yes, sir.

THE COURT: Okay.  Mr. Taylor -- at this point, Mr. Schiller, all of my questions will be directed to Mr. Taylor.

**Let the record reflect Mr. Taylor is now counsel of record for Mr. Schiller, and it was done after closing arguments.**

Tr. at 790-91 (emphasis added).

The seminal United States Supreme Court decision on the issue of the right to self-representation is <u>Faretta v. California</u>, 422 U.S. 806 (1975), in which Faretta, a criminal defendant, "clearly

27

and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel." <u>Id</u>. at 835.  The Supreme Court held that a defendant has a right to represent himself but, in order to do so, he must knowingly and intelligently waive his right to counsel.  <u>Id</u>.

> On direct appeal, the Government bears the burden of proving a defendant has waived his right to counsel knowingly and voluntarily. <u>Garey</u>,[12] at 1169; <u>United States v. Cash</u>, 47 F.3d 1083, 1088 (11th Cir. 1995). But when a defendant "seeks release by the extraordinary remedy of habeas corpus, the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional right to assistance of Counsel," <u>Johnson v. Zerbst</u>, 304 U.S. 458, 468-69, 58 S.Ct. 1019, 1025, 82 L.Ed. 1461 (1938); <u>see also</u> <u>Ferguson v. Culliver</u>, 527 F.3d 1144, 1147 (11th Cir. 2008); <u>Vines v. United States</u>, 28 F.3d 1123, 1135 (11th Cir. 1994); <u>Lindsey v. Smith</u>, 820 F.2d 1137, 1149 (11th Cir. 1987).  A writ of habeas corpus may be issued only if the petitioner "convinces the court by a preponderance of evidence" that he did not validly waive his right to counsel. <u>Johnson</u>, 304 U.S. at 469, 58 S.Ct. at 1025. Consequently, it is [Petitioner] who bears the burden of proving his waiver was unknowingly made.
>
> . . . .
>
> [Petitioner] argues the trial court was obliged to warn him of the dangers of self-representation, and because it did not do so, his Sixth Amendment rights were violated. Our precedents establish, however, that failure to provide on-the-record warnings does not always lead to reversal. <u>See</u>, <u>e.g.</u>, <u>Strozier v. Newsome</u>, 926 F.2d 1100, 1105 (11th

---

[12] <u>United States v. Garey</u>, 483 F.3d 1159 (11th Cir. 2007).

Cir. 1991) (<u>Strozier II</u>); <u>United States v. Fant</u>, 890 F.2d 408, 409 (11th Cir. 1989); <u>Fitzpatrick</u>,[13] 800 F.2d at 1065.  Though this Court has held time and again that trial courts should ensure defendants do not waive counsel unless they understand the protections they are surrendering, <u>see</u>, <u>e.g.</u>, <u>Garey</u>, at 1167; <u>Cash</u>, 47 F.3d at 1088, it does not follow automatically that [Petitioner's] constitutional rights were violated by the court's failure to warn him in this particular case.

The warnings given (or not given) to a criminal defendant are relevant to whether the defendant knowingly waived his right to counsel; however, the failure to provide on-the-record warnings is not conclusive proof that a defendant's waiver of counsel was unknowingly made.  We require trial courts to warn defendants of the dangers of self-representation not because the warnings are an end in themselves, but because they are a means to the end of ensuring defendants do not waive fundamental constitutional rights without an adequate understanding of the consequences of their choices.  <u>Cf</u>. <u>Strozier v. Newsome</u>, 871 F.2d 995, 998 (11th Cir. 1989) (<u>Strozier I</u>) (warnings are "a means to the end [of] ensuring a voluntary and intelligent waiver").  Despite our strong admonition that trial courts provide on-the-record warnings to all defendants who wish to waive their right to counsel, the "ultimate test" of whether a defendant's choice is knowing is not the adequacy of the trial court's warning but "the defendant's understanding." <u>Fitzpatrick</u>, 800 F.2d at 1065; <u>see also Stano v. Dugger</u>, 921 F.2d 1125, 1145 (11th Cir. 1991) (en banc).

So long as a defendant knows the risks associated with self-representation, it is irrelevant for constitutional purposes whether his understanding comes from a colloquy with the trial court, a conversation with his

---

[13] <u>Fitzpatrick v. Wainwright</u>, 800 F.2d 1057 (11th Cir. 1986).

> counsel, or his own research or experience. The core inquiry is whether the defendant understood the choices before him and the potential dangers of proceeding pro se. If so, his waiver is valid.

Jones v. Walker, 540 F.3d 1277, 1292-93 (11th Cir. 2008) (en banc), cert. denied, 129 S.Ct. 1670 (2009).

> To determine whether the waiver is "knowing, voluntary, and intelligent," we consider several factors; they are: (1) the defendant's age, educational background, and physical and mental health; (2) the extent of the defendant's conduct with lawyers prior to trial; (3) the defendant's knowledge of the nature of the charges, possible defenses, and penalties; (4) the defendant's understanding of the rules of procedure, evidence, and courtroom decorum; (5) the defendant's experience in criminal trials; (6) whether standby counsel was appointed and the extent to which that counsel aided the defendant; (7) any mistreatment or coercion of the defendant; and (8) whether the defendant was trying to manipulate the events of trial. Cash, 47 F.3d at 1088-89.

United States v. Pair, 312 Fed.Appx. 176, 183 (11th Cir. 2008) (per curiam) (not selected for publication in the Federal Reporter).

In reviewing the record as a whole in light of the eight factors identified above, Schiller's waiver of counsel was knowing, voluntary, and intelligent. During the Faretta inquiry, the trial court found that Schiller could read, write, and understand English. Schiller acknowledged that he was educated, although he had not graduated from college. Thus, the court determined that Schiller was intellectually able to make the decision to represent himself based on Schiller's in-court demeanor and ability to

articulate his thoughts both verbally and in his pro se filings. Additionally, the court found him competent to do so based upon Dr. Bloomfield's evaluation finding Schiller to be competent. See Resp. Ex. 16 at 3-4.

Importantly, the trial judge informed Schiller of the possible penalties for the offenses. Resp. Ex. 6 at 213-14. Additionally, the judge explained the advantages of proceeding with counsel and how an attorney is familiar with rules of procedure and evidence. Id. at 208-11. The judge also explained the perils of proceeding pro se. Id. at 211-13. Schiller acknowledged that he understood the dangers and disadvantages of proceeding pro se and stated that he did not have any questions about those dangers and disadvantages. Id. at 213. Moreover, the transcripts of jury selection and the trial reflect that Schiller had a fair understanding of the rules of procedure, evidence, and courtroom decorum. The record also reflects that Schiller had experience with the criminal justice system.[14] More importantly, prior to and at the time of the Faretta hearing, Schiller had filed numerous pro se motions, and therefore, the court was aware of his ability to handle the demands of self-representation.

---

[14] Schiller had an extensive prior criminal history, including crimes of dishonesty and two felony convictions (escape and burglary). See Resp. Exs. 5 at 172; 7 at 460; Tr. at 138-45, 413-15, 709.

As noted previously, the court appointed standby counsel for Schiller, and stand by counsel was available to assist Schiller during jury selection and at trial.  There is no evidence that Schiller was mistreated or coerced at any point in the proceedings. The record reflects that the trial court and the prosecutor were cordial to Schiller, and the court repeatedly explained matters to Schiller and/or allowed him to consult with standby counsel.[15]

In sum, Schiller, as a habitual felony offender, had a prior criminal record and knowledge of the criminal justice system.  He was informed of the risks associated with self-representation.  The court permitted Schiller to proceed pro se only after inquiry, and he thereafter had over four months to prepare for trial (with standby counsel available).  The trial court renewed the offer of appointed counsel at every critical stage of the proceedings.  Tr. at 17-18, 85-86, 152, 157, 569-70, 733, 735.  Nevertheless, prior to and during trial, Schiller made it abundantly clear that he desired to proceed pro se.

At trial, Schiller told the jury that he was representing himself because he felt it was in his best interest.  Id. at 176, 226.  Occasionally during trial, Schiller conferred with standby counsel, and standby counsel assisted him.  The transcript of the jury selection and trial reflects that he was able to present his

---

[15] Before jury selection, the trial judge warned Schiller about his disruptive behavior and informed him about acceptable courtroom behavior.  Tr. at 15.

case in a coherent manner, with the assistance of standby counsel. Given the record, all of the pertinent factors support a finding that Schiller's waiver of the right to counsel was knowing, voluntary, and intelligent. See Jones, 540 F.3d at 1292-93. Therefore, ground one is due to be denied.

## B. Grounds Two and Five

Petitioner asserts that the trial court erred when it denied his pro se motion for continuance to allow the defense additional time to subpoena Susan Elaine Kyle and Tina Jenkins Coleman to testify at trial (ground two), thus denying him the right to present witnesses in his own defense (ground five). He contends that a continuance was necessary since standby counsel (David Taylor) and a court-appointed investigator (Kevin Mitchell) failed to investigate, locate, depose, and subpoena Kyle and Coleman whose testimony would have changed the outcome of the trial. Schiller raised this issue in his brief on direct appeal, see Resp. Ex. 19 at 17-19, and the State filed an Answer Brief, see Resp. Ex. 20 at 20-27.[16] The appellate court affirmed Petitioner's conviction and sentence per curiam. Schiller, 935 So.2d 505; Resp. Ex. 22. Assuming that pro se Petitioner intends to raise the same claim

---

[16] Schiller also raised this issue in his Rule 3.850 motion, as ground eight. In denying the post-conviction motion as to the issue, the trial court stated: "Defendant represented himself during this portion of his trial, and thus was responsible for subpoenaing and securing the presence of his own witnesses, as was indicated to him by the trial court." Resp. Ex. 27 at 110 (citing Tr. at 643).

here that he raised on direct appeal in state court, his claim is sufficiently exhausted.

In its appellate brief, the State addressed the claim on the merits.  Accordingly, the appellate court may have affirmed Petitioner's conviction based on the State's argument on the merits.  If the appellate court addressed the merits, Petitioner would not be entitled to relief because the state court's adjudication of this claim is entitled to deference under AEDPA.[17] After a thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Additionally, assuming that the state court's adjudication of this claim is not entitled to deference under AEDPA, Petitioner's claim is, nevertheless, without merit. Several months before trial, the court appointed standby counsel to assist Schiller, but Schiller was not diligent in his preparations for trial and did not ask for any assistance in subpoenaing the witnesses until just a few days before trial.  Standby counsel explained:

---

[17] See Harrington, 131 S.Ct. at 785.

Sir, just from my standpoint is we hired
an investigator in the case, and he went over
to the jail and met with Mr. Schiller.  And
one of the things he was asked to do numerous
things.  But one of the things he was not
asked to do was to procure service and serve
process on anyone.

On Monday  [(October  11,  2004)]  Mr.
Schiller for the first time brought that to my
attention  that  he  would  want  to  have  a
subpoena served on particular individuals.  So
I contacted the investigator and inquired as
to whether or not that had ever been requested
and he indicated it had not.  And I asked him
if he could assist us now in trying to serve
some individuals on Monday.

He indicated he did not have much time
but that he could arrange for someone within
his  office  to  come  over  and  serve  the
individuals as they appeared on the state's
case to serve them an additional subpoena so
they would be bound for the defendant's case.

Therefore, we have, from speaking with
the investigator and his staff, we have now
served I believe every one that the state has
called plus Officer Santoro.  So we have valid
-- we could produce valid proof of service for
each of those subpoenas, but there are no
additional witnesses that I am aware of that
we have valid service on because that simply
could not be accomplished between Monday and
today [(October 13, 2004)].

Id. at 640-41.

Given the record, the trial court did not abuse its discretion

in denying Schiller's request for a continuance, see Tr. at 500-01,

to subpoena Kyle and Coleman to testify at trial.  Over four months

before trial, Judge Davis had explained to Schiller that there are

many disadvantages of self-representation, including: "You will not

be entitled to a continuance simply because you wish to represent yourself throughout these proceedings if you get in trial and do not understand something." Resp. Ex. 6 at 211.  Moreover, at trial, Judge Davis informed Schiller: "You don't get in the middle of trial and then start calling witnesses, subpoenaing witnesses, and looking for witnesses.  That's why I told you it is foolish to fire your lawyer but you were persistent in doing that.  So the predicament you are in is of your own making."  Tr. at 643. Schiller has not shown that he was diligent in obtaining subpoenas for witnesses nor that he timely requested assistance from the investigator or standby counsel nor that the court's denial of the request for a continuance prejudiced his defense.[18]  A review of the record shows that Schiller presented a defense and called several witnesses to testify on his behalf.  Accordingly, Petitioner's grounds two and five do not warrant federal habeas relief.  See Resp. Ex. 20 at 20-27.

### C. Ground Three

As ground three, Petitioner claims the trial court erred in denying his motion to suppress without affording him an evidentiary

---

[18] Schiller asserts that Susan Kyle would have testified that on the morning of May 8, 2003, a man approached her and requested information about house/apartment rentals, but that, when she viewed a photo pack, she was not able to identify Schiller as that man.  Petition at 13.  Additionally, Schiller states that Tina Coleman saw a man on another street riding a bike with a black bag in a basket, but that she was not able to identify Schiller as that man.  Id. at 14.

hearing.  Schiller raised this issue in his brief on direct appeal, see Resp. Ex. 19 at 41-42, and the State filed an Answer Brief, see Resp. Ex. 20 at 44-46.  The appellate court affirmed Petitioner's conviction and sentence per curiam.  Schiller, 935 So.2d 505; Resp. Ex. 22.

To the extent that Schiller raised this trial court error claim on direct appeal as a federal constitutional claim, the appellate court may have affirmed Petitioner's conviction on the merits.  If the appellate court addressed the merits, Petitioner would not be entitled to relief because the state court's adjudication of this claim is entitled to deference under AEDPA.[19] After a thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.  Moreover, assuming that the state court's adjudication of this claim is not entitled to deference under AEDPA, Petitioner's claim is, nevertheless, without merit.  Resp. Ex. 20 at 44-46; Resp. Ex. 5 at 92, 116; Resp. Ex. 6 at 296-400; Resp. Ex. 7 at 401-35.

---

[19] See Harrington, 131 S.Ct. at 785.

### D. Ground Four

As ground four, Petitioner claims that the court's admonishments to him not to "testify" and the prosecutor's objections to Petitioner's questions on the same ground constituted fundamental error because they were fairly susceptible of being interpreted as referring to his failure to testify.  Petition at 20-22; P. Ex. B.  Schiller raised this issue in his brief on direct appeal, see Resp. Ex. 19 at 23-30, 31-40, and the State filed an Answer Brief, see Resp. Ex. 20 at 39-41, 42-43. The appellate court affirmed Petitioner's conviction and sentence per curiam. Schiller, 935 So.2d 505; Resp. Ex. 22.  Assuming that pro se Petitioner intends to raise the same claim here that he raised on direct appeal in state court, his claim is sufficiently exhausted.

The State, in its appellate brief, addressed the claim on the merits.  Thus, the appellate court may have affirmed Petitioner's conviction based on the State's argument on the merits.  If the appellate court addressed the merits, Petitioner would not be entitled to relief because the state court's adjudication of this claim is entitled to deference under AEDPA.[20]  After a thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based

---

[20] See Harrington, 131 S.Ct. at 785.

on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Additionally, assuming that the state court's adjudication of this claim is not entitled to deference under AEDPA, Petitioner's claim is, nevertheless, without merit.  The court's admonishments and the prosecutor's objections and/or statements are set forth in Petitioner's Initial Brief.  <u>See</u> Resp. Ex. 19 at 24-26, 31-38.  In reviewing the trial judge's comments as well as the prosecutor's objections, this Court opines that they were <u>not</u> comments on Schiller's failure to testify.  Instead, while Schiller questioned a witness, the judge instructed him on several occasions as follows: "You have to ask questions, you can't testify or express your opinion as you've been doing all day."  Tr. at 362.  Given the record, the court was compelled to repeatedly instruct Schiller to limit his examination of witnesses to asking them questions rather than making "statements" and "testifying."  Undoubtedly, based on Schiller's questioning of witnesses, the court's admonishments were necessary and appropriate.  Additionally, the court's reminders to Schiller to refrain from repeatedly violating the same rules of procedure were fair and not abusive.  Indeed, Schiller had a fair trial.  Accordingly, Petitioner's claim does not warrant federal habeas relief.

## VIII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.   The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.   If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.   The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 14th day of November, 2012.

**MARCIA MORALES HOWARD**
United States District Judge

sc 7/18
c:
Anthony Leon Schiller
Ass't Attorney General (Duffy)